## EVERTS v. WORRELL.

No. 3560.   Decided April 4, 1921.   Rehearing Denied May 24, 1921.
(197 Pac. 1043.)

. 1.   PHYSICIANS AND SURGEONS—INSTRUCTION ON PATIENT'S CON-
TRIBUTORY NEGLIGENCE HELD NOT SUFFICIENTLY SPECIFIC. In a
minor's action for malpractice in improper treatment of skin
disease, where the defense was contributory negligence in not
following instructions, a general instruction on such defense
*held* not sufficiently specific, as it should have instructed, but
did not instruct, that in determining the question of contribu-
tory negligence the jury should consider all the facts and cir-
cumstances in evidence respecting the patient's age, experience,
or want thereof, and his knowledge or want of knowledge re-
specting his disease and condition, and the instructions that
he received, if any, from his physician.

2.   TRIAL—STATUTE REQUIRING INSTRUCTIONS APPLICABLE TO THE
CASE FORBIDS ABSTRACT INSTRUCTIONS.   While Comp. Laws 1917,
§ 6802, requiring instructions applicable to the case, does not
require instructions on every point that may be raised in a
case, unless requested by proper requests at the proper time,
yet it does mean that the court may not merely give the jury
abstract propositions of law.

3.   TRIAL—EXCEPTION TO INSTRUCTION HELD SUFFICIENT AS TO IN-
STRUCTION TOO ABSTRACT.   Under Comp. Laws 1917, § 6806, as
to exceptions, if an instruction covers one general subject, and,
if considered as a whole, fails to correctly reflect the law "ap-
plicable to the case," as required by section 6802, an exception
to such an instruction is sufficient, although there may be
phrases, or even sentences, in the instruction, which are un-
objectionable.

4.   PHYSICIANS AND SURGEONS—FAILURE TO INSTRUCT PATIENT IS
NEGLIGENCE.   It is incumbent on a physician to give such in-
structions as are proper and necessary to enable the patient or
his nurses and attendants to act intelligently in the treatment

of the case, and a failure to do so is negligence, which will render him liable for injury resulting therefrom.

5. PHYSICIANS AND SURGEONS—NONLIABILITY FOR MISTAKES IS CONFINED TO HONEST MISTAKES. A physician and surgeon is not excusable for every mistake, but only for his honest mistakes, and when founded on some reasonable doubt, and if he makes a mistake by reason of undue inadvertence, or for lack of diligence or attention, however carefully and skillfully he may have diagnosed and treated the case, he nevertheless cannot be excused for such a mistake, if it results in injury to his patient.

Appeal from District Court, Second District, Weber County; *A. W. Agee,* Judge.

Action by Henry W. Everts, Jr., by Henry W. Everts, Sr., his guardian, against R. E. Worrell. From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED.

*C. R. Hollingsworth, L. J. Holther,* and *Jos. E. Evans,* all of Ogden, for appellant.

*Hurd & Hurd,* of Salt Lake City, and *Royal J. Douglas,* of Ogden, for respondent.

FRICK, J.

Plaintiff, a minor, by his guardian, commenced this action against the defendant, who is a duly licensed physician and surgeon, to recover damages for certain ailments or injuries which, plaintiff alleges, were caused through the negligence, carelessness, and unskillfulness of the defendant in diagnosing and treating the plaintiff for a certain skin disease with which he had been afflicted since he was 13 years of age. The facts respecting the unskillful diagnosis and treatment are set forth with much particularity in the complaint.

The time when the alleged wrongful acts were committed

is alleged to have been in April and May, 1918, arid this action was commenced in October, 1919. The defendant, in due time, filed an answer to the complaint in which, after admitting that he was a licensed physician and surgeon and that he had treated the plaintiff, denied all acts of negligence, carelessness, and unskillfulness, and averred that he had carefully and properly diagnosed plaintiff's ailment, and that he had carefully and properly treated him, etc. The defendant further averred—

"that whatsoever pain and suffering, if any, and whatsoever expense, if any, the plaintiff or his guardian has incurred or suffered, or may hereafter incur or suffer, and any and all paralysis and other disability suffered or sustained by the plaintiff, other than such as necessarily and naturally resulted or may result from the infections, diseases, or ailments with which said plaintiff was afflicted, were and are the result of, and directly contributed to by, the fault, carelessness, and negligence of said plaintiff and his guardian in failing, refusing, and neglecting to carry out, take, or adopt the advice, instructions, and treatment ordered and recommended by the defendant for the same, and the same are not and were not the result of any fault or neglect, or any wrongful or improper treatment given or ordered by defendant, or any act or neglect whatsoever on the part of this defendant; and, further, denies each and every allegation in said complaint contained not specifically admitted."

We have set forth the foregoing averments of defendant's answer as they were stated to the jury in the court's instructions for the reasons that will hereinafter more fully appear.

The case was tried to a jury, which found the issues in favor of the defendant and returned a verdict accordingly. Judgment having been duly entered on the verdict, and plaintiff's motion to set the same aside and for a new trial having been overruled, he prosecutes this appeal from the judgment, and assigns numerous errors. Such as are deemed material we shall hereinafter consider in their order.

Briefly stated, the salient facts are: That in the month of April, 1918, the plaintiff, then being between 17 and 18 years of age, was afflicted with a disease called acne, an eruptive skin disease generally limited to the face and shoulders. The disease, it seems, is more or less common among young peo-

ple during the period of adolescence. The plaintiff, at the
time aforesaid, was employed in Ogden as collector for a local
daily newspaper, and in the course of his employment, dur-
ing the month of April aforesaid, called at the defendant's
office to collect a small bill owing by the defendant to the
newspaper. Plaintiff states that at the time he called the
defendant's attention to the condition of his face, and that
the defendant informed him that he was afflicted with acne,
and that the defendant could successfully treat the ailment.
Plaintiff also says that the mode of treatment and the de-
fendant's fees were discussed, and that a time was fixed when
plaintiff should receive his first treatment. Plaintiff, at the
time agreed upon, went to defendant's office and received his
first treatment. The first treatment consisted in injecting
into the veins of plaintiff's arm a preparation which all the
parties agree was what, by the profession, is called neosalvar-
san. Plaintiff did not notice any particular symptoms aris-
ing from the first treatment and continued to discharge his
duties as he had been doing. In about 10 days after the first
treatment, he, by arrangement, went to the defendant's office
for a second treatment, which was given in the same manner
as the first one. The plaintiff, however, states that during
the operation of injecting the fluid into the veins of his arm
his heart began to throb; that he became sick, and "had
shooting pains from head to foot," and that he was very
much affected; that the defendant told him to go into an-
other room and lie down on a bed, which he did, and in an
hour or so thereafter went home; that on arriving there he
had severe headache and vomited and purged freely; that he
felt some better the next day, but did not go to work; that
on the day following he did not feel well, but on the third
day felt somewhat better; that on the night of the third day,
or, rather, on the morning of the fourth day, his body became
paralyzed from the hips, or a little above the hips, down-
ward, so that he was deprived of the use of his lower limbs
and of his urinary organs and of his lower bowel, including
the rectum; that is, he had lost the power of locomotion and
the sense of feeling throughout the lower part of his body,

including the organs just referred to. The plaintiff also testified that the defendant made no examination of plaintiff's body or organs before administering the preparation aforesaid, except an inspection of his face, while the defendant and his nurse testified that a thorough examination was made of plaintiff's body and organs before the neosalvarsan was administered, as before stated. The plaintiff also stated that the defendant gave him no instructions with respect to the treatment or his conduct, while the defendant insists that he did instruct plaintiff with respect to what he should do. It further appears that the plaintiff informed the defendant that some of his coemployés at the newspaper office had intimated an unwillingness to continue working with him in the office by reason of the condition of his face, the pimples or postules upon which, it seems, had of late become somewhat more active than they had been. The manager of the paper spoke to the plaintiff about the matter, and informed him that under the circumstances he would have to quit work at the end of the month. The plaintiff, being desirous of continuing his work, spoke to the defendant about the matter, whereupon the defendant gave plaintiff the following certificate:

"Dr. R. E. Worrell, Physician and Surgeon,
                    Rooms 527-529, Eccles Building.
                    "Phones: Office 754. Res. 1726.
                                        "Ogden, Utah, April 29, '18.
"Ogden Examiner—Gentlemen:
    "This is to certify that I have been taking care of Henry Everts, that he is suffering from acne, and is free from venereal diseases, and, as far as I can ascertain, has never been afflicted with gonorrhea or syphilis.
                    "Very respectfully,
                                        R. E. Worrell."

There is some conflict respecting the precise dates on which plaintiff received the two treatments. He produced a receipt which the defendant had issued as evidence of the first payment of $5 which plaintiff paid the defendant. The receipt is dated April 16, 1918. Plaintiff insists that he received the first treatment either on the date stated in the receipt or a

day or two later, and that he received the second and last treatment on April 27, 1918. The conflict in that regard is, however, not very material.

The plaintiff's and the defendant's statements respecting what was said with regard to the ailment with which plaintiff was afflicted and its treatment are greatly conflicting. The plaintiff vigorously insisted at the trial that the defendant did not intimate to him that he was afflicted with anything except acne and that he knew nothing to the contrary; that plaintiff at no time told the defendant that he had been exposed to syphilis or that he was afflicted with that disease; while, upon the other hand, the defendant insists that while he may not have told the plaintiff in so many words that he was afflicted with syphilis, the defendant, nevertheless, felt quite confident that the plaintiff understood that he was so afflicted. The defendant further testified that notwithstanding the certificate he had given the plaintiff he, nevertheless, was afflicted with a typical—the defendant says an unmistakable—case of what the defendant called "acneiform syphilide." On that subject the defendant testified: "There is absolutely no question in my mind on earth but what he (plaintiff) did have syphilis," and, further, "I was certain he had syphilis." These statements were frequently repeated by defendant.

In corroboration of plaintiff's statement that he did not have syphilis, a doctor who had examined the plaintiff some time before the trial testified that he found no evidence or indications that the plaintiff was, or ever had been, afflicted with syphilis. This doctor also testified that the injection of neosalvarsan into the veins of one afflicted with acne was improper treatment, and that two injections of neosalvarsan into the veins, under the circumstances detailed in the hypothetical question propounded to him, might produce paralysis.

There are other circumstances, which we cannot pause to state here, which corroborate the statements of both the plaintiff and the doctor last above referred to.

There is, however, also much expert evidence, which, by

assuming that plaintiff's symptoms as described by the defendant were correctly stated, also corroborates the defendant's contention that the plaintiff, at the time he presented himself for treatment, was afflicted with syphilis in some of its different forms, and that the diagnosis was correct; that his treatment of the plaintiff was in accordance with the most approved methods; that the neosalvarsan was properly administered, and, under the circumstances, in the opinion of the experts, was harmless. There was, it seems to us, more learning displayed in trying the case than was necessary. The bill of exceptions abounds with technical terms and learned disquisitions on "embolisms," and on "thromboses," on "occlude," and on "occludation," on "ankle clonus" and "syphilitic myelitis," on primary, secondary, and tertiary syphilis, and also on latent, acquired, and congenital syphilis, on "para-syphilis," syphilitic degeneration, and on malignant "endocarditis." There is also much said about the cervical, dorsal, lumbar, sacral, thoracic, and the epitrochlear, and other regions. In addition to all this we have also lectures on Wassermans's tests and on Babinski's toe sign. Indeed, the only regions that are not discussed and defined are the solar plexus, the oil, and the nether regions. Then we have the "exaggerated reflexes" and hundreds of other things. All this is followed with a most interesting discussion of the germ which, it is said, produces the disease called syphilis. But even here the doctors, as usual, differ. Some call the germ by the old familiar name of Spirochæta; others call it Spirochæta pallida; while still others give it the name of Treponema pallidum. Much is said about the past history of syphilis. The doctors traced it back before Abraham's time. After reading the learned discussions of the doctors, and their statements respecting the numerous ways by which the ordinary mortal may become infected with the ubiquitous and never sleeping Treponema pallidum, one marvels why any of us have escaped its deadly grasp. Much of the evidence in this case, while no doubt interesting, and, perhaps, enlightening, to the medical fraternity, nevertheless merely tends to bewilder and confuse the laymen who are called to

sit as jurors. It is therefore not hard to conceive that, unless the jury is carefully and fully directed in the instructions, they may easily be misled respecting what their verdict should be. This case, as we shall now proceed to show, affords a striking example how, by merely observing the general rules, a jury may not receive that information and direction which the law contemplates.

We shall now proceed to a discussion of the court's instructions that are excepted to by the plaintiff.

On the question of contributory negligence the court, in instruction No. 11, charged the jury as follows:

"If you find from a preponderance of the evidence that the defendant was guilty of negligence as defined in paragraph 3 of these instructions, and that such negligence was the proximate cause of the injuries of the plaintiff in the first instance, or in their beginning, but that such injuries were thereafter aggravated or increased by negligence on the part of the plaintiff, as alleged in defendant's answer, I charge you that such contributory negligence on the part of the plaintiff would not prevent him from recovering some damages for his said injuries, but he could not recover damages caused by the aggravation or increase of his injuries resulting from his own negligence, but the entire damages sustained by him should be diminished to the extent which such negligence on his part contributed thereto by aggravating or increasing the same. But if you find from a preponderance of all the evidence that the plaintiff was guilty of negligence as alleged in the answer of the defendant, and that such negligence proximately contributed to the beginning or commencement of his injuries, then he cannot recover, and your verdict should be for the defendant."

Plaintiff's counsel excepted to the instruction in the following words:

"Plaintiff excepts to instruction No. 11 and to the whole thereof, except to the first sentence of said instruction No. 11, and excepts to the last sentence of said instruction No. 11."

Defendant's counsel contend that under the rule adopted by this court, which has become elementary, unless the specific portion of an instruction to which an exception is taken is pointed out, or if an instruction is excepted to as a whole, and any part of it is good, the exception is unavailing, and hence that the foregoing exceptions is insufficient.

Our statute (Comp. Laws Utah 1917, § 6802), among other

things, provides: "When the evidence is concluded, the court shall instruct the jury in writing upon the law *applicable to the case.* * * *" (Italics ours.) While this does not mean that the court must necessarily in- **1, 2** struct upon every point that may be raised in a case, unless requested by proper requests by counsel at the proper time, as has often been held by this and many other courts, and as explained in 2 Thompson on Trials (2d Ed. § 2341), yet it does mean that the court may not merely give the jury abstract propositions of law. The instructions must be applicable to the issues, facts, and circumstances of the particular case on trial.

Section 6806, in part, provides:

"* * * Exceptions to the charge or any portion thereof, or to the refusal or modification of any instruction requested, shall be taken at the time the charge is given or before verdict. No reason need be given for such exceptions, but the exceptions shall be noted upon the minutes of the court, or by the court stenographer if one is in attendance."

While the law is settled in this jurisdiction that in taking an exception no reason need be assigned, it is, however, equally well settled that an exception must point out the particular part of the instruction which is deemed faulty, so that the court may correct the fault, if any exists, and so that this court may know the precise point of law that is raised by the exception. Such a course is absolutely necessary to the orderly, convenient, and expeditious administration of justice. As the statute states, however, the instruction of the court must be applicable to the facts and circumstances of the case that is being tried. This, as a matter of course, means that mere statements of abstract propositions of law, although correct in form and substance, if not applicable to the case on trial, are not sufficient. The law may therefore be correctly stated in an instruction, when abstractly considered, but may, nevertheless, be faulty in that the law as stated may not be applicable to the case. This principle is well stated in *Re Calkins,* 112 Cal. at page 305, 44 Pac. 577, in the following words:

"A court should adapt its instructions to the evidence which is

to be considered by the jury, and, instead of giving to them definitions of abstract propositions of law, should so connect its instructions with the facts or evidence to which they are applicable as to lead them to make the proper application thereof."

That case was followed in *People* v. *Gleason,* 122 Cal. 372, 55 Pac. 123, and *Gwin* v. *Gwin,* 5 Idaho, 290, 48 Pac. 295.

If, therefore, an instruction covers one general subject, which, if considered as a whole, fails to correctly reflect the law "applicable to the case," an exception to such an instruction is sufficient although there may be phrases, or even sentences, in the instruction that are unobjectionable. In this case instruction No. 11, in our opinion, belongs to the class to which we have just referred. The instruction deals with the subject of contributory negligence of the plaintiff. While it is true that perhaps the first sentence of the instruction may not be so faulty as would authorize a reversal of the judgment, yet the second sentence, which is specifically excepted to, is so general that, as we shall see, it was practically of no assistance to the jury, and was not applicable to the facts and circumstances of this case. As pointed out, the defendant relied on contributory negligence as an affirmative defense. In his answer, which the court copied in paragraph 3 of the instructions, he states that the injuries of which the plaintiff complains were "the result of  *  *  * the fault, carelessness, and negligence of said plaintiff and his guardian," and that the negligence consisted in "failing, refusing, and neglecting to carry out, take, or adopt the advice, instructions, and treatment ordered and recommended by the defendant. The alleged negligence, therefore, consisted in failing and neglecting to do the specific things enumerated and in nothing else. It will also be observed that the plaintiff and his guardian are charged jointly as being guilty of negligence. It conclusively appears from the record that the guardian was not appointed until more than a year after the alleged wrongs were committed. Moreover, he, in all probability, was appointed only for the purposes of this action.

It is not easy to understand, therefore, how the plaintiff

can be held liable for anything that his guardian may have done or omitted to do. Yet in instruction No. 11 the court always refers to paragraph 3 of the instructions, where the alleged contributory negligence is set forth. The court, in explicit terms, told the jury that all that was necessary to defeat the action was that they find "that the plaintiff was guilty of negligence as alleged in the answer of the defendant, and that such negligence proximately contributed to the beginning or commencement of his injuries." In that instruction paragraph 3 of the instruction is specifically referred to, and it is to that paragraph the court referred the jury in determining plaintiff's contributory negligence. The instruction being couched in very general terms, a jury of laymen could easily be led to assume that any act or omission in the particulars stated in the answer on the part of the guardian, as well as on the part of the plaintiff, should be taken against the plaintiff. Assuming, however, that under the instruction the jury limited their consideration to the alleged personal acts and omissions of the plaintiff himself, yet, in view of the very general language used in the instruction, the jury could easily have been misled in finding negligence on the part of plaintiff.

In this connection we must always keep in mind the nature of the case, the issues to be tried, and the character of the evidence, and, in applying the evidence to the plaintiff, his knowledge respecting his own condition, his youth and inexperience, should not be overlooked. We should also keep in mind the fact that the defendant, as an experienced physician and surgeon, had given the plaintiff a certificate in which he not only unqualifiedly certified that the plaintiff was free from syphilis, but he also stated that the plaintiff had never had either that or any other venereal disease. In addition to this, the plaintiff testified that, so far as he knew, he never had been exposed to the disease and that he never was afflicted with it. If, therefore, the plaintiff believed that he was not afflicted with the disease, he naturally would not know or appreciate the consequences that might follow certain acts or omissions on his part. The law is well settled

that it is the duty of the physician to instruct his patient how to avoid all ill consequences, if the patient is ignorant with respect to the matter, which is usually the case. Take this case as an example. Here the doctors, who are experts, after careful examinations, and after consulting the authorities, and after mature reflection, still differ with regard to whether plaintiff was afflicted with syphilis at any time; and yet the plaintiff is to be adjudged as though he not only knew that he was afflicted with syphilis, but that he also knew and appreciated every consequence that might follow the slightest act or omission on his part.

In the case of *Carpenter* v. *Blake,* 60 Barb. (N. Y.) 488 (affirmed in 75 N. Y. 12), the court, in passing on the question of contributory negligence on the part of the patient, in the course of the opinion, at page 521 of 60 Barb. (N. Y.), said:

"If there was any [negligence], it was the result of ignorance on the part of the plaintiff, as to how the limb should be treated; that ignorance, it was the duty of the defendant to remove by giving her such instructions as to its care, as would enable her not only to prevent injury, but to treat it so as to facilitate cure."

We are not unmindful of the fact that the defendant testified that he had given plaintiff certain instructions what to do. Neither do we overlook the fact that, although the plaintiff denied from first to last that he had received instructions until after he was in a paralyzed condition and beyond all relief, the question was one for the jury. The circumstances were such, however, that the jury should have been specifically told just what the duties of the defendant were in a case of this character, and that in determining whether the plaintiff was guilty of contributory negligence barring a recovery it should take into consideration his experience, his knowledge or want of knowledge, and the character of the disease, and all the facts and circumstances in evidence which would throw light upon plaintiff's negligence, if there was any. We have no hesitancy in saying that even though everything the defendant stated respecting the instructions that he gave the plaintiff respecting what he should do relative to the treatment is true, yet those instructions

were merely perfunctory and in no way enlightening to plaintiff respecting his condition. The law with respect to what a physician's instructions to his patient should cover is clearly stated in 22 A. & E. Enc. Law (2d Ed.) 893, in the following words:

"It is incumbent upon a physician to give such instructions as are proper and necessary to enable the patient or his nurses and attendants to act intelligently in the further treatment of the case, and a failure to do so is negligence which will render him liable for injury resulting therefrom."

While no hard and fast rule can be laid down respecting the form or character of the instructions a physician should give in all cases, yet what we affirm is that in this case the instructions were hardly sufficient to justify the defendant to charge the plaintiff, a mere boy, with contributory negligence in that he failed to obey his orders.

If it be true, however, that the treatment given plaintiff was entirely harmless, and could in no event have resulted in injury to him, as the defendant in most positive terms testified, then again it necessarily follows that the instructions given the plaintiff were entirely useless, and could have effectuated nothing even though followed to the letter. In this connection it should also be remembered that the court, in most general terms, charged the jury respecting what constituted contributory negligence. In that regard the court said:

"'Contributory negligence,' as used in these instructions, is the want of ordinary care on the part of the party injured; that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances."

"Ordinary care" was defined thus:

"'Ordinary care,' as used in these instructions, means that degree of care which a person of ordinary prudence would ordinarily exercise under the same or similar circumstances."

No doubt, in the great majority of cases of mere negligence, such general statements would have been sufficient to meet the requirements of the law. In a case like the one at bar, however, where the experts differ respecting the nature and character of the disease, and the patient may be wholly

ignorant of the danger to which he is exposed, and his physician does know, it seems to us that before the physician can charge the patient with contributory negligence barring a recovery he should see that he fully advised the patient respecting his condition and the dangers to which he might be exposed, and how to avoid them.

The law, with respect to what the instructions of the court should cover in malpractice cases, is well stated in 30 Cyc. 1588, in the following words:

"In an action for malpractice, the court should make an adequate presentation of the case to the jury, explaining the precise questions at issue, and directing attention to the material evidence on both sides. The jury should be instructed as to the necessity of the employment of the physician, and as to the duty of the physician to exercise reasonable skill and care in his treatment of the case. Instructions should be given relative to the burden of proof, and, if the issue is raised, as to the care required of plaintiff, and the effect of his contributory negligence. It is not sufficient to give a general instruction on the subject. The instructions given should be confined to the issues as made by the pleadings and the evidence, and should not assume facts not proved, or be inconsistent or misleading."

If such be the law as applied to ordinary cases of malpractice, how much more important it is in a case like the one at bar where the disease is of the most treacherous character, and the patient may be entirely oblivious of the real danger to which he is exposed and of which his physician has full knowledge and information.

It is no doubt wholesome law that a patient must obey the instructions of his physician, and if he fails to do so must suffer the consequences. Where the patient, however, is not informed of his actual condition and the dangers to which he may become exposed, and is left in ignorance respecting that matter, and by reason of such ignorance falls into error, or, figuratively speaking, walks from a precipice in the darkness of night, he should be judged only in the light of what he knew, or, in view of the facts and circumstances, should have known. The law charges him constantly with what he ought to have known in view of all the circumstances.

In view, therefore, of the peculiar circumstances of this

case, and for the reason that the defendant did not inform the plaintiff respecting the dangers to which he, through certain acts or omissions on his part, might become exposed, and in view of the fact that the court's instruction in question was not applicable to this case, we feel constrained to hold, and do hold, that the court erred in giving the instruction in the general language in which it was given.

It is next contended that the court erred in giving another instruction. The court, after charging the jury under what circumstances the defendant would be liable, and the degree of "learning and skill" that he is required to exercise in the diagnosis and treatment of diseases, concluded the instruction as follows:

"But if he does possess such learning and skill, and does use and exercise such care, skill, caution, and diligence as herein described, he is not liable, even though he has made a mistake in such diagnosis and treatment, or has failed to perfect a cure."

The excerpt just quoted was specifically excepted to and is assigned as error. Two objections are urged against the instruction: (1) That there was neither issue nor evidence respecting any mistake; and (2) that the law is not that a physician and surgeon is excused for every mistake, but that he is only excused for his honest mistakes, etc. The law in that regard is tersely stated in 22 A. & E. Enc. Law (2d Ed.) 804, in the following words:

"A physician, surgeon, or dentist possessing the requisite qualifications and applying his skill and judgment with ordinary care and diligence to the diagnosis and treatment of a patient, is not liable for an honest mistake or error of judgment in making a diagnosis or prescribing the mode of treatment, where there is ground for reasonable doubt as to the practice pursued."

To that effect are the approved forms for instructions found in 3 Blashfield, Instructions to Juries, p. 3609.

In the very nature of things such must be the law. A physician and surgeon is not excusable for every mistake, but only for his honest mistakes and when founded upon some reasonable doubt. If he makes a mistake by reason of undue inadvertence, or for lack of diligence or attention, however carefully and skillfully he may have

diagnosed and treated the case, he, nevertheless, cannot be excused for such a mistake if it results in injury to his patient. The court, therefore, should have qualified the statement respecting the mistakes for which the law affords an excuse. Here again, however, if this were merely an ordinary case of malpractice or negligence, we should not feel inclined to reverse the judgment for the error just discussed. In this case, however, the conditions surrounding the plaintiff were so peculiar that the jury was liable to be misled unless instructed in explicit terms respecting the different phases of the law.

For these reasons we feel constrained to hold that the court erred in not more specifically stating the nature of the mistakes for which the law affords no excuse.

There is no merit in the contention that the court erred in charging the jury in other respects, as contended by plaintiff's counsel.

It is next urged that the court erred in refusing to grant a new trial upon the ground of newly discovered evidence. There is no merit in this contention. The alleged newly discovered evidence was merely cumulative.

In concluding this opinion, in order to avoid any misunderstanding respecting its scope and effect, we do not wish to be understood as holding that the instructions as given in this case on negligence and contributory negligence would, in ordinary cases of negligence, be held to be insufficient. In such cases the parties to the transactions usually stand upon an equal footing, and the facts and circumstances are rarely such as require elucidation by experts. In a case like the one at bar, however, the patient and his physician do not stand upon an equality, and the patient is usually uninformed respecting the character of his disease, and thus necessarily must be directed what to do by his physician in order to avoid ill consequences, if any such may follow. If, therefore, the physician relies upon the contributory negligence of his patient to defeat a recovery in case of malpractice, the patient should be advised respecting the consequences of any act or omission on his part, and not be left in the dark with respect

thereto. Otherwise he cannot act intelligently in the premises. The court, therefore, should instruct the jury that in determining the question of contributory negligence they should take into consideration all the ·facts and circumstances in evidence respecting the patient's age, experience, or want thereof, and his knowledge or want of knowledge respecting his disease and condition, and the instructions that he received, if any, from his physician. This was not done in this case, and, in view of the peculiar circumstances, we have been forced to the conclusion that the plaintiff has been prejudiced in a substantial right, and has not had that full fair and impartial trial which our laws guarantee to every suitor.

By what we have said we do not wish to be understood as holding, or even intimating, that the evidence is not sufficient to support a finding that the defendant properly diagnosed and carefully administered the neosalvarsan, and in that regard exercised that degree of care and skill which the law requires, but what we do hold is that the instructions, for the reasons stated, were insufficient in the particulars set forth herein.

The judgment is therefore reversed, and the cause is remanded to the district court of Weber county, with directions to grant the plaintiff a new trial at defendant's cost.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.