469 P.2d 7

Howell UJIFUSA, Plaintiff and Respondent,

v.

NATIONAL HOUSEWARES, INC., Defendant and Appellant.

No. 11901.

Supreme Court of Utah.

May 8, 1970.

Christensen & Jensen, Ray R. Christensen, Salt Lake City, for appellant.

Dwight L. King, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment on a jury verdict for plaintiff in an action for personal injury damage while riding on a snowmobile. Affirmed with costs to plaintiff.

Plaintiff, commercial photographer, age 44, was employed to take pictures of a snowmobile to advertise defendant's camera equipment. The situs was a ski resort near Salt Lake City. Defendant's vice-president drove the vehicle and plaintiff sat tandem immediately behind him. In ascending a hill, the vehicle was driven around a man-made snowbank or hump. In descending, the driver, instead of bypassing the hump, drove over it at what would appear to have been a reasonable speed for an auto. It left the surface about a foot, according to the driver, and traveled in the air about 10 or 12 feet, according to another witness. In landing the driver was thrown upward and to the rear and on top of plaintiff's stomach causing plaintiff to land on his back against a vertical back rest, requiring that he rest for 20 or 30 minutes and causing an undisputed injury to one of his vertebrae. Nonetheless, he finished his assignment. He had done some skiing himself and knew they would follow a trail

with some irregularities. He had never ridden a snowmobile. The driver of the vehicle admitted that he could have gone around the hump on the descent,—as he had done on the ascent. The driver did not advise plaintiff he would jump the machine over the hump and plaintiff did not inquire about such a possibility. Being seated behind the driver, he could not see the hump, and obviously had no opportunity personally to take any preventive action.

On the evening of the accident plaintiff saw his doctor, a qualified orthopedic surgeon, who, after examining him, said there was a muscle spasm in the low back area, considerable tenderness in the lumbar region, no great pressure on the nerves going to the legs, but there was a compression fracture of the second lumbar vertebrae, as reflected in x-rays taken. Such a compression, continued the doctor, is caused from flexion of the spine, in different ways, such as a weight falling on one who is doubled up. The doctor recommended hospitalization because of the pain, but said that plaintiff declined because of pressure of business. As a substitute, he recommended use of a hyperextension brace to prevent bending, which was obtained and used by plaintiff. He indicated that if the pain became intolerable a fusion could be accomplished. He also indicated that after an event such as that occurring here, there is an excess or abnormal amount of wear and tear, with more pain, as would occur to any joint that wears out before it should. The doctor also said that the injury caused 10% permanent disability and was on the lowest scale of severity, with no cord or nerve damage; that the recommended hospitalization was for comfort; that the disability consisted of discomfort experienced in making certain bodily movements with which condition plaintiff would have to live, and that a person could live a normal life under such circumstances unless, because of his occupation, he is forced to do something that hurts him.

Plaintiff admitted he lost no days of work, but had to forego outside work. He had not seen a doctor nor had he been treated by one before the accident. He could do no physical work with the brace on his back, which kept him rigid but did not relieve the pain. Although he needed extra help during the Christmas season, none was obtainable, so he cancelled his outside work which required lifting and carrying 50 to 75 pounds of equipment. Thereafter he hired a man for a couple of months and paid him. He has continuing pain like a toothache, has been unable to do what he did before, and gets someone else to do it, like photographing weddings,—about five a month, he said, at $15 to $20 each. Before the accident, he swam, golfed, fished and bowled. After the accident he could

not play golf or fish, but could swim, and with some pain, could bowl.

The foregoing, we believe, is a fair and accurate condensed statement of uncontradicted evidence, and not necessarily that more favorable to plaintiff, as we could if we chose, treat the evidence on appellate review.

Defendant says 1) that there is no evidence of any negligence on the part of defendant, 2) that the court erred in not instructing the jury on assumption of risk, and 3) that the verdict was excessive.

■ As to 1), we believe that the recitation above reflects that there *was* evidence, which, if believed, would constitute negligence, particularly in view of the facts that defendant took an unnecessary risk with a business invitee, whose safety was within its control, by jumping an obstacle which easily could have been avoided and by causing the vehicle to leave the ground,— an act that certainly was foreseeable as a cause for injury under the facts of this case. It is to be noted in this connection that instructions also were given on contributory negligence and even on unavoid-

able accident, but the jury did not choose to find for defendant on either such theory.

■ As to 2), Assumption of Risk: It does not appear that there were any circumstances so obvious and knowledgeable to a person like the plaintiff here as to reflect a hazard that would lead a reasonable person to protect himself against a likely injury. We can see no facts in this case that would justify an instruction that we believe and hold would invite not only error but only indulgeable conjecture on the part of the veniremen. We cannot perceive of any conclusion, based on the facts of this case, that would justify the defense of assuming a visible, known risk any more than would justify a defense on account of contributory negligence, which latter defense the jury, under proper instructions, specifically did not buy. We believe our conclusion in this respect amply is supported in what we have said before in some of our cases.[1]

The cases cited by appellant, largely have to do with well known hazards incident to sporting events,[2] where onlookers pay to watch something involving such hazards. For what it is worth, it is noted that in the

1. Hindmarsh v. O. P. Skaggs Foodliner, 21 Utah 2d 413, 446 P.2d 410 (1968); Evans v. Stuart, 17 Utah 2d 308, 410 P.2d 999 (1966); Johnson v. Maynard, 9 Utah 2d 268, 342 P.2d 884 (1959); Clay v. Dunford, 121 Utah 177, 239 P.2d 1075 (1952). See also Prosser, Torts 386: "Failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk but of the defense of contributory negligence."

2. Hamilton v. Salt Lake City, 120 Utah 647, 237 P.2d 841 (1951), (struck by foul ball at ball game); Tannehill v. Terry, 11 Utah 2d 368, 359 P.2d 911 (1961), (hit by a golf club), Harrop v. Beckman, 15 Utah 2d 78, 387 P.2d 554 (1963), (injury while water skiing).

instant case plaintiff paid nothing for the ride, but conversely was being paid for his work under a contract, and was an invited business guest passenger, on a vehicle, which if carefully operated, would appear to pose no more of a hazard than that encountered while riding in a taxi, train or trolley car.

 As to 3): Excessiveness of the verdict: The evidence is without dispute that there was an injury, causing 10% permanent disability to a 44-year-old business man, who, because of such injury will suffer lifetime pain, loss of business that must be farmed out or go elsewhere because of the injury, deprivation of indulgence in favorite pastimes such as golf (which would kill some golf nuts) and fishing (which would torture the average Izaak Walton), with the spectre that increased pain might require surgical fusion of the spine. This does not seem to be so uncompelling as to justify washing out of the $10,000 verdict. The only exasperating circumstance on review is the roly-poly round figure of $10,000, that just happens to be the maximum insurance policy coverage taken out by most motorists,—but a wee bit of intellectual dishonesty, if in truth becomes the luxury of a jury,—cannot be inferred. The only inference that might be made is that the high frequency of $10,000 verdicts has some sort of relationship to the personal insurance experience of jurymen or women.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

ELLETT, J., concurs in the result.