**Vie STEELE, Plaintiff and Appellant,**

v.

**Robert H. BREINHOLT dba Aspen Care Center, Defendant and Respondent.**

No. 860321–CA.

Court of Appeals of Utah.

Dec. 21, 1987.

James R. Hasenyager (argued), Marquardt, Hasenyager & Custen, Ogden, for plaintiff and appellant.

Ford G. Scalley (argued), Steven K. Walkenhorst, Morgan, Scalley & Reading, Salt Lake City, for defendant and respondent.

Before BENCH, GREENWOOD and BILLINGS, JJ.

## OPINION

BENCH, Judge:

Plaintiff appeals the dismissal of her complaint for no cause of action. We reverse and remand for a new trial.

Just past noon on October 22, 1984, plaintiff Vietta Steele and her husband entered defendant Aspen Care Center (the Center), a privately owned and operated skilled nursing home facility, to visit an old friend, Zenon Dompor. Jolene Andersen, a social worker at the Center, told plaintiff she must leave as there was a restraining order in effect prohibiting her presence in the Center. Plaintiff asked to see the order. A restraining order did not, in fact, exist. Instead, Andersen produced a letter from the Center, dated June 21, 1984, which plaintiff had received, requesting she stay away from the Center or a restraining order would be obtained. Both Andersen and Debra Hill, the medical records clerk, asked plaintiff to leave, but she refused. The police were called, and plaintiff was arrested and charged with criminal trespass, in violation of Utah Code Ann. § 76-6-206 (1978). Plaintiff was taken to the police station, booked, and, after spending a short period in a holding cell, released on her own recognizance.

On the day set for trial, the criminal trespass charge was dismissed, Dompor having died in the interim. Plaintiff thereafter filed this action seeking damages for malicious prosecution, abuse of process, false imprisonment, and the tort of outrage.

At the conclusion of trial, the trial court instructed the jury as follows:

The plaintiff here alleges that the agents of the defendant lack both proper motive, that is, acting with malice, and acted also without probable cause, that is a reasonable basis for the belief that she had committed criminal trespass. The defendant denies these allegations. The defendant further alleges that the plaintiff is in fact guilty of the charge. The law provides that persons should be encouraged to bring criminal offenders to justice, and does not intend to reward guilty people with civil judgment, and, therefore, guilty persons should not recover for any of the first three civil wrongs here alleged, such as malicious prosecution, abusive process, false arrest or imprisonment. If she is in fact guilty of criminal trespass, she cannot recover under any of the first three theories or questions here presented, and the answer to each question should be "no." For this defense to come into play, the defendant must prove by at least a preponderance of the evidence the elements of that offense. The elements are as follows: (1) That the plaintiff entered or remained on the defendant's premises; and (2) Did so after she was reasonably informed that she was requested not to enter or remain.

Previously, in the trial judge's chambers, plaintiff requested the court to instruct the jury pursuant to section 76-6-206(4): "It is a defense to prosecution under this section [criminal trespass]: (a) That the property was open to the public when the actor entered or remained; and (b) The actor's conduct did not substantially interfere with the owner's use of the property." The trial court refused to give plaintiff's requested instruction.

The jury found no cause of action existed and dismissed the complaint. On appeal, plaintiff argues the trial court erred in failing to instruct the jury as to the statutory defense to criminal trespass.

In refusing plaintiff's request to instruct the jury pursuant to section 76-6-206(4), the court stated:

[I] think they're talking about the public domain and that I don't think they're talking about private property ... I don't think you have any right to remain on the property as a defense unless it's public domain or something of this sort. I think this type of a rest home is sufficiently private that it doesn't apply ... I don't think it's private property where you have a right to remain.

The trial court in effect ruled, as a matter of law, "property ... open to the public" in section 76-6-206(4) refers only to public, i.e. government-owned, property.

■ The Utah Supreme Court has held "questions of legislative intent and statutory application are matters of law, not fact." *Gonzales v. Morris*, 610 P.2d 1285, 1286 (Utah 1980). On appeal, we accord a trial court's conclusions of law no particu-

lar deference, but we review them for correctness and are free to render our independent interpretation. *Faulkner v. Farnsworth,* 714 P.2d 1149, 1150 (Utah 1986); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

■ We do not agree with the trial court's restricted interpretation and application of section 76–6–206(4). If the legislature had intended this statutory defense to be so limited, the statute could have been drafted to more clearly reflect such an intent. Rather, we believe "open to public" to have a broader application, such as the definition provided by the Oregon state legislature. Or.Rev.Stat. § 164.205(4) (1983) states:

"Open to the public" means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe no permission to enter or remain is required.

We therefore conclude "property ... open to the public" in section 76–6–206(4) is not limited to public, i.e. government-owned property.

■ The question remains whether, under our interpretation of the statute, there was evidence presented which would support plaintiff's claim that the Center remained open to her. A party is entitled to have the jury instructed on his theories of the case and points of law provided competent evidence is presented to support them. *Hillier v. Lamborn,* 740 P.2d 300, 302 (Utah App.1987). Failure to give a requested instruction is reversible error if it "tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *Jorgensen v. Issa,* 739 P.2d 80, 82 (Utah App.1987).

■ At trial, defendant Robert H. Breinholt, owner of the Center, testified the Center "is open to patient visitors whom the patient would want." Further, one of the required rights of patients at the Center states, "The patient has the right to associate and communicate with persons of his choice...."

David Havas, the attorney contacted by the Center to represent Dompor, prepared the June 21 letter which he sent to plaintiff's attorney. The letter read as follows:

I have been contacted by the Aspen Care Center as well as the senior citizen ombudsman in reference to my client Zenon Dompor, and they indicate that Vietta Steele has been at the Aspen Care Center causing disturbances involving Zenon Dompor. Mr. Dompor is an elderly gentleman who is of ill health and, as I am sure you can appreciate, this type of conduct is detrimental to his health. I request that you counsel your client requesting she stay away from Aspen Care Center and refrain from causing any further disturbances. If she does not do so, I will be forced to obtain a restraining order to that effect. I do not want to have to do this, and thus hope that you can convince your client of the seriousness herein, and have her voluntarily remain away from the center.

Havas testified Dompor hired him as his attorney. In March 1984, Havas, at Dompor's request, sent a letter to plaintiff revoking any power of attorney plaintiff may have had over Dompor's affairs. Havas testified Dompor "wanted to handle his own affairs" and "did not want anyone interfering with his life." Plaintiff never had a power of attorney from Dompor. The June 21 letter, however, was not specifically authorized by Dompor, Havas testified, but was prepared at the request of the Center.

Havas further testified that in the few meetings he had with Dompor, "[w]henever the subject of Vietta Steele came up, [Dompor] became visibly agitated [and] upset." Dompor indicated that he liked plaintiff and wanted to be her friend, but "he wanted limited contact with her."

Jolene Andersen, the social worker, testified that after she told plaintiff she could not be in the Center and asked her to leave, plaintiff refused. Andersen then asked Dompor, who was sitting in a wheelchair in the lobby, if he wanted to see plaintiff. She testified he replied, "No, no." Andersen testified plaintiff said she wanted to be

arrested so that everything would be documented.

Debra Hill, the medical records clerk, testified that earlier the morning of plaintiff's arrest, Dompor approached her. He was upset about a visit he had with plaintiff the night before, and indicated to Hill he did not want to see plaintiff because he was "concerned that she was after his money." Hill also testified Dompor expressed similar feelings in June 1984. Hill further testified that on October 22, after plaintiff had refused to leave, she also asked Dompor if he wanted to see plaintiff and also received a negative response. Hill signed the citizen's complaint to arrest plaintiff.

Plaintiff testified she and Dompor had been close friends for many years. In 1970, Dompor suffered a stroke. Plaintiff served as his self appointed guardian for about five years. Thereafter, her husband acted as his guardian for one year until First Security Bank took over his financial affairs. From 1970 until 1983, plaintiff visited Dompor in the hospital or the Center as often as twice a week.

In mid-September 1984, subsequent to her receipt of the June 21 letter, plaintiff, accompanied by Robert Low, veteran's employment specialist for the Department of Employment Security, visited Dompor. Plaintiff testified Dompor received her willingly and "held her hand and wanted me to stay." Low also testified that upon their visit, Dompor "perked up" and gave "every evidence of being relatively pleased to see" them. Low further testified Dompor "held [plaintiff's] hand and cried." No employee of the Center attempted to hinder this visit.

On October 19, 1984, plaintiff called Steven Andersen, an employee at the Center. Andersen told plaintiff Dompor's health was deteriorating. On October 21, the night before her arrest, plaintiff, accompanied by her friend Anna Holman, went to visit Dompor. Again, no employee of the Center hindered their visit; in fact, plaintiff testified "they were very nice to us." Plaintiff and Holman found Dompor in very poor condition. He had apparently spilled food on his pajama front. After asking an aide for permission, they changed his top. Plaintiff testified Dompor "cried when he saw me, and hung on to my hand and begged me not to go home that night." Holman testified Dompor was "happy" to see them and held plaintiff's hand.

The next morning, October 22, plaintiff contacted Low and expressed her concerns about Dompor's health. Low instructed her to visit Dompor and ask him if he wanted to go to the Veteran's Hospital. Plaintiff, accompanied by her husband, went to the Center. Plaintiff testified she was never asked to leave or given the choice to leave rather than be arrested. According to her testimony, she asked to see the purported restraining order, and the next thing she knew, the police had arrived and placed her under arrest.

Clearly, from the evidence and testimony presented at trial, a question of fact existed as to whether the Center was "open" to plaintiff. It is the exclusive province of the jury to determine the credibility of the witnesses and weigh the evidence. *Groen v. Tri–O–Inc.*, 667 P.2d 598, 601 (Utah 1983). The trial court committed reversible error in not allowing the jury to determine whether the statutory defense to criminal trespass was available to plaintiff.

The dismissal of plaintiff's complaint is reversed and the matter is remanded for a new trial.

BILLINGS and GREENWOOD, JJ., concur.