DaNiece MIKKELSEN, Plaintiff
and Appellant,

v.

Marlan J. HASLAM, M.D., Defendant
and Respondent.

No. 880291–CA.

Court of Appeals of Utah.

Nov. 28, 1988.

Rehearing Denied Dec. 16, 1988.

Wayne L. Black, Susan B. Diana (argued), Black & Moore, Salt Lake City, for plaintiff and appellant.

Richard W. Campbell (argued), Cynthia Campbell, Campbell and Neeley, Ogden, for defendant and respondent.

Before BILLINGS, GARFF and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

Plaintiff-appellant DaNiece Mikkelsen ("Mrs. Mikkelsen") appeals from a judgment of no cause of action in a malpractice action against defendant-respondent Dr. Marlan J. Haslam, ("Dr. Haslam") based on a jury verdict which found Mrs. Mikkelsen and Dr. Haslam equally negligent. She also appeals from an order denying her motion for a new trial and/or for entry of judgment notwithstanding the verdict in her favor on the issue of liability. We reverse and remand for a new trial.

## FACTS

Mrs. Mikkelsen was born with a congenitally dislocated right hip which restricted her mobility and caused her to walk with a limp. As an adult, she was nevertheless able to take care of her family and work outside the home. Mrs. Mikkelsen first contacted Dr. Haslam in 1973 to discuss a total hip replacement. Initially, Dr. Haslam did not recommend hip replacement surgery. Instead, Dr. Haslam removed the metal plate that had been previously implanted in her upper right femur by Dr. Perry. Mrs. Mikkelsen returned to Dr. Haslam in February 1974 and told him she was experiencing increasing discomfort in her right hip. Dr. Haslam performed surgery replacing her hip on March 13, 1974. Dr. Haslam examined Mrs. Mikkelsen six times during the ensuing six months. His notes from the last appointment state that Mrs. Mikkelsen had no complaints, walked with a "barely perceptible limp," and was experiencing no pain in her hip.

Dr. Haslam testified that his advice to Mrs. Mikkelsen following her surgery, was no different than that given to his other post-surgery hip arthroplasty patients. He explained that the surgery was successful and the hip was strong, but that she should not run, twist, or lift. However, Mrs. Mikkelsen testified that during her last appointment, Dr. Haslam told her that the artificial hip created no physical limitations, and that she could ski, play tennis, and do anything she wanted. Since she wanted to ski, she began performing exercises to strengthen her leg.

Five years after the surgery, in February of 1979, Mrs. Mikkelsen felt ready to begin skiing, and confided her intentions to two co-workers. They insisted that she check with Dr. Haslam to make sure skiing was safe for her. The two co-workers testified that Mrs. Mikkelsen called Dr. Haslam from the office, and from what they heard from their end of the conversation, Dr. Haslam endorsed the skiing. Mrs. Mikkelsen testified that Dr. Haslam stated that her "right hip was as strong, if not stronger, than her left hip," and she should "go ahead and have a good time." Dr. Haslam

denies having such a conversation, or on any occasion telling Mrs. Mikkelsen that she could ski.

Mrs. Mikkelsen began skiing lessons in the spring of 1979 and went skiing about ten times during that season. In October of 1979, Mrs. Mikkelsen saw Dr. Haslam at her daughter's wedding, where she claims he again expressed satisfaction at her progress, including her ability to ski. Her daughter, her husband, and a family friend corroborated Mrs. Mikkelsen's version of the conversation. Dr. Haslam and his wife do not recall such a conversation.

On March 2, 1980, Mrs. Mikkelsen was skiing with several family members. The sky was overcast, snow had fallen the previous evening, the trail was partially groomed but not packed. She and a family friend, who was a ski patrolman, skied a run together. Mrs. Mikkelsen testified that about one third of the way down the slope, she began to make a snow plow turn and heard a "pop." Thereafter, she lost control of her right leg causing her to fall, and immediately felt excruciating pain. The ski patrolman testified that Mrs. Mikkelsen was executing turns with deliberation when he heard a loud popping sound and saw her fall. Mrs. Mikkelsen was taken to St. Benedict's Hospital.

Dr. Crosland, the attending physician at St. Benedict's Hospital, diagnosed her condition as a "severe comminuted fracture of the proximal right femur around the cemented femoral component of the total hip replacement...." Dr. Haslam had relinquished his privileges at St. Benedict's Hospital and could not treat her there. Therefore, Dr. Crosland removed the femoral component of the hip arthroplasty, and placed a long metal rod down Mrs. Mikkelsen's femur to stabilize the fracture. During the surgery, Dr. Crosland found the medial bone to be "just a very small shell that could be cracked just by flicking it with a fingertip." He further testified "that the bone along the medial cortex of the femur ... was paper thin."

Mrs. Mikkelsen's present physician, Dr. Harold Dunn, stated that it is not possible to reimplant a hip arthroplasty because of the condition of her bone. Dr. Haslam agrees with the post-accident diagnosis of Drs. Crosland and Dunn that Mrs. Mikkelsen will be confined to a wheelchair or restricted to walking with crutches for the rest of her life. She suffers significant pain, and needs help with virtually all personal care and household chores.

At trial, five orthopedic surgeons testified that failure to advise a total hip replacement patient that the prosthesis was a walking hip only, and that the patient should not ski or jog, is a departure from orthopedic medical profession standards.

Mrs. Mikkelsen brought this action against Dr. Haslam alleging generally that he committed malpractice in failing to properly advise her of the physical activity limitations imposed by her hip replacement, particularly in advising her she could ski. She also claims he should have performed x-rays and other appropriate follow-up examinations of the hip and leg area on a regular basis after the surgery in order to apprise himself of her condition.

The trial judge rejected Mrs. Mikkelsen's requested jury instructions 4, 16 and 17, which sought to limit the defense of contributory negligence or assumption of the risk.

By special verdict, the jury found Dr. Haslam negligent, and his negligence a cause of Mrs. Mikkelsen's injuries. The jury also found that Mrs. Mikkelsen was negligent and/or assumed the risk and that her negligence or assumption of the risk was a cause of her injuries. The jury allocated 50% of the fault to Dr. Haslam and 50% of the fault to Mrs. Mikkelsen, and thus, as instructed, awarded no damages to Mrs. Mikkelsen.

Mrs. Mikkelsen appeals from the judgment based on this special verdict, alleging that the jury found Dr. Haslam negligent in advising her that she could ski and that this erroneous advice caused her injuries. Given these findings, she claims that since there was no evidence that her injuries were caused by the "manner" in which she was skiing, contributory negligence and/or assumption of the risk were as a matter of law unavailable defenses. Therefore, she

claims it was error not to give her requested jury instructions which limited these defenses. Mrs. Mikkelsen asks this court to reverse and remand for a trial on the issue of damages only.

## STANDARD OF REVIEW

"It is the exclusive province of the jury to determine the credibility of the witnesses and weigh the evidence." *Steele v. Breinholt,* 747 P.2d 433, 436 (Utah Ct.App. 1987). On appeal, however, we accord no particular deference on issues of law, but independently review the trial court's legal instructions for correctness. *Faulkner v. Farnsworth,* 714 P.2d 1149, 1150 (Utah 1986); *Steele,* 747 P.2d at 434–35.

## CONTRIBUTORY NEGLIGENCE/ASSUMPTION OF THE RISK

 A party is entitled to have his theories of the case submitted to the jury provided there is competent evidence to support them. *Steele,* 747 P.2d at 435; *Biswell v. Duncan,* 742 P.2d 80, 88 (Utah Ct.App.1987); *Hillier v. Lamborn,* 740 P.2d 300, 302 (Utah Ct.App.1987). Failure to give requested instructions is reversible error if it tends to mislead the jury to the prejudice of the complaining party or erroneously advises on the law. *Steele,* 747 P.2d at 435; *Biswell,* 742 P.2d at 88. Submitting the issue of contributory negligence to a jury when there is no reasonable evidence in the record to support this defense is reversible error and grounds for a new trial. *Johnson v. Hartvigsen,* 13 Utah 2d 322, 373 P.2d 908, 910 (1962); *Garcia v. Puchi,* 24 Ariz.App. 210, 537 P.2d 47, 48 (1975); *Pinewood Dev. Co. v. Truman,* 20 Ariz.App. 544, 514 P.2d 497, 498 (1973).

Mrs. Mikkelsen sought by instruction 4 to inform the jury that although she had multiple theories of why Dr. Haslam's postoperative care was negligent, she must only establish one theory to recover:

*Plaintiff's Instruction No. 4*

You are instructed that in order to recover against the defendant, the plain-

tiff is not required to prove every act of negligence alleged in her Complaint. It is sufficient if she has proved by the greater weight of the evidence any act or omission on the part of the defendant which constituted negligence and proximately caused her injuries and damage.

Mrs. Mikkelsen also requested two instructions which would have eliminated assumption of the risk and contributory negligence defenses to certain of her theories of recovery.

*Plaintiff's Requested Instruction No. 16*

You are instructed that in the event you should find from a preponderance of the evidence that defendant gave plaintiff medical advice that she could ski without suffering adverse physical risks to her total hip replacement, then it would not be negligence on her part to undertake to ski.

*Plaintiff's Requested Instruction No. 17*

You are instructed that defendant has alleged in his answer as a defense that plaintiff assumed the risks incident to her skiing activities. In this connection, you are further instructed that plaintiff in legal contemplation cannot be held to have assumed the risks incident to her accident unless defendant proves by a preponderance of the evidence:

1. That plaintiff was given medical advice before the accident that there was an unusual risk to her total hip replacement if she were to ski.

2. That having knowledge of such risk she nevertheless undertook to ski and to assume said risk in disregard of said medical advice.

 Mrs. Mikkelsen's theory of the case was that she could not, as a matter of law, be contributorily negligent or have assumed the risk when she skied, if Dr. Haslam advised her she could ski. Thus, if the jury believed Dr. Haslam had told her she could ski, (one of her theories of negligence) contributory negligence/assumption of the risk should not have gone to the jury unless her manner of skiing was negligent.[1] Mrs. Mikkelsen's position is well

---

1. Under Utah's present comparative negligence

statute, where an instruction on contributory

supported by the law and the trial court erred in not giving her instructions.

▮▮▮ A physician has a duty to warn his patient of how to avoid injury following treatment and failure to do so is negligence. *Everts v. Worrell,* 58 Utah 238, 197 P. 1043, 1046–47 (1921); *Nixdorf v. Hicken,* 612 P.2d 348, 354 (Utah 1980); *Madsen v. Park Nicollet Medical Center,* 419 N.W.2d 511, 515 (Minn.Ct.App.1988). A jury must be specifically instructed on the duties of a physician in this context. The mere giving of abstract instructions on negligence without adapting the instructions to the duties present in the case is error. *Everts,* 197 P. at 1046–47.

▮▮▮ The physician-patient relationship permits a patient to rely on a doctor's professional skill and advice. Therefore, an instruction on contributory negligence or assumption of the risk is properly refused when it requires a patient to determine whether the doctor is giving the patient correct advice. *See Everts,* 197 P. at 1048. *See also Largess v. Tatum,* 130 Vt. 271, 291 A.2d 398, 403 (1972); *Morrison v. MacNamara,* 407 A.2d 555, 567–68 (D.C.Ct. App.1979). It is not contributory negligence to follow the advice of a physician without distrusting the physician and appealing to other physicians to check the opinion. *Everts,* 197 P. at 1048; *Fairchild v. Brian,* 354 So.2d 675, 680 (La.Ct.App. 1978); *Kelly v. Carroll,* 36 Wash.2d 482, 219 P.2d 79, 90 (1950).

▮▮▮ To successfully invoke assumption of the risk thereby precluding recovery, plaintiff must voluntarily assume the risk of a known danger [2] where one has reasonable opportunity to make an alternate choice. *Evans v. Stuart,* 17 Utah 2d 308, 410 P.2d 999, 1002 (1966). When circumstances of risk are not known or obvious to a person because she has entrusted

herself to the professional control of her physician, and has allegedly followed her physician's advice, an instruction on assumption of the risk would invite not only error but also conjecture on the part of the jurors. *Ujifusa v. National Housewares, Inc.,* 24 Utah 2d 219, 469 P.2d 7, 9 (1970); *see Evans,* 410 P.2d at 1002; *see also Largess,* 291 A.2d at 403.

For example, in *Largess,* the plaintiff fell and fractured her hip. The defendant doctor assisted in the installation of a "Jewett nail" to stabilize the hip. Although the operation was successful, the doctor failed to inform the plaintiff that she needed to use a weight-bearing device until re-evaluation. Relying on the doctor's implied approval, she walked out of the hospital unassisted. The court rejected the doctor's claim of contributory negligence as the doctor sought to fault the plaintiff for following a course of conduct which the doctor permitted and even encouraged during her hospital stay. *Largess,* 291 A.2d at 400–04.

In this case, there was competent evidence presented at trial that Dr. Haslam advised Mrs. Mikkelsen that she could ski without risk. There is no evidence that she at the time knew of the risk of skiing or did not rely on Dr. Haslam's advice in taking up skiing.

▮▮▮ All testifying medical experts concurred that downhill skiing was a sport hip replacement patients should not do. Thus, under the facts in the record, it was error for the trial judge to refuse plaintiff's requested instructions 4, 16 and 17. These instructions advised the jury that Mrs. Mikkelsen need only prove one theory of negligence against the doctor and that if the jury found for her on the theory that Dr. Haslam had advised her that she could ski, *and her manner of skiing was not negligent,* the defense of contributory negli-

---

negligence is given, a separate instruction on assumption of the risk is cumulative and has been held improper. *Stephens v. Henderson,* 741 P.2d 952, 955 (Utah 1987); *Jacobsen Const. Co., Inc. v. Structo-Lite Engineering Inc.,* 619 P.2d 306, 312 (Utah 1980). Thus, the trial court should have treated these concepts together and we will refer to them jointly for the remainder of this opinion.

**2.** In the few medical malpractice decisions where the defense of assumption of the risk has been sustained, the patient was specifically warned about a risk and refused to follow the doctor's instructions. *Morrison,* 407 A.2d at 568; *see Marshall v. Ogden Railway,* 118 Utah 161, 221 P.2d 868, 870 (1950).

gence/assumption of the risk was not available.

The court should make clear through its jury instructions that one form of contributory negligence alleged is that Mrs. Mikkelsen assumed the risk of skiing against her doctor's instructions. Thus, instructions such as plaintiff's instructions 16 and 17 should clarify that contributory negligence/assumption of the risk is only appropriate if the jury finds that the doctor did not advise Mrs. Mikkelsen she could ski. Furthermore, if Dr. Haslam told her she could ski, or did not advise her of the specific risks of skiing, the jury should be instructed that in order to find Mrs. Mikkelsen was contributorily negligent *she must have been negligent in her manner of skiing.*

### NEW TRIAL ON LIABILITY AND DAMAGES

■ Mrs. Mikkelsen claims that since the jury found Dr. Haslam negligently advised her that she could ski, a new trial should be limited to the issue of damages. When error is assigned to giving or failing to give instructions, we must determine whether the principles of law were correctly presented to the jury in a clear and understandable way. *City of Tucson v. Wondergem*, 6 Ariz.App. 570, 435 P.2d 77, 79, 83 (1968); *Wellman v. Noble*, 12 Utah 2d 350, 366 P.2d 701, 702 (1961). Where two issues are interwoven and not easily divisible, a new trial on both issues is required. *Groen v. Tri–O–Inc.*, 667 P.2d 598, 607, n. 11 (Utah 1983); *cf. City of Ottawa v. Heathmen*, 236 Kan. 417, 690 P.2d 1375, 1380 (1984); *Caterpillar Tractor Co. v. Beck*, 624 P.2d 790, 795 (Alaska 1981).

■ In this case, the special verdict form does not ask the jury to make factual findings. Therefore, we cannot determine which theory of recovery resulted in a verdict of negligence against Dr. Haslam and thus, whether the issue of contributory negligence/assumption of the risk was or was not properly allowed to go to the jury. Accordingly, all of the issues involved must be retried. *Caterpillar Tractor Co.*, 624 P.2d at 795; *City of Tucson*, 435 P.2d at 83; *Deerfield Commodities v. Nerco, Inc.*, 72 Or.App. 305, 696 P.2d 1096, 1112 (1985).

We reverse and remand for a new trial in conformance with the legal principles outlined herein.

GARFF and JACKSON, JJ., concur.