WREN, A MINOR, APPELLANT, *v.* STEIGER, A MINOR, ET AL., APPELLEES.

(No. 1572—Decided July 29, 1970.)

*Messrs. Petri, Hottenroth & Garverick, Mr. Kenneth M. Petri, Mr. Lowell B. Garverick, Messrs. Myers, Spurlock & Sears* and *Mr. Robert S. Spurlock,* for appellant.
*Messrs. Kennedy, Kennedy, Purdy & Wead* and *Mr. Clarence F. Purdy,* for appellees.

COLE, P. J. This is an action by plaintiff, appellant herein, a minor, against defendant, appellee herein, a mi-

nor, for injuries sustained when plaintiff was seriously wounded by a rifle bullet. The incident occurred on September 25, 1967. The two minors, aged 16 and 15, respectively, in the company of four other minor boys of about the same age on that day went in a car to a wooded area about one mile south of Bucyrus. There were some five guns of various sizes and makes in the possession of the group when they went to this site to engage in target shooting. The automobile was parked along the side of a road known as Harper's Road. The boys proceeded to leave the car, and some of the firearms were loaded with ammunition at the road area. The plaintiff with another boy proceeded down a dirt trail or road some 25 to 50 yards into the wooded area to a clearing. He there engaged briefly in shooting at a beer can with a pistol. He was just handing the gun to his companion when he was struck by a rifle bullet and wounded. The evidence is conflicting as to what guns were fired, how many shots were fired at the road area and by whom. However, the evidence tended to indicate that a moment or so prior to the time plaintiff was struck, the defendant, while examining a Browning automatic rifle belonging to another boy, discharged it. There was testimony that this was the only Browning automatic rifle in the group of five guns, and expert testimony based on rifle markings that the bullet taken from plaintiff's body was fired by a Browning automatic rifle but that the markings were insufficient to narrow the possibilities down to this single gun—only to the type or make of rifle.

Without a detailed examination of the conflicting testimony at this time, it is sufficient to note that the jury found for defendant, but, in answer to interrogatories submitted by plaintiff, found specifically that the defendant was negligent. The case is now before us on appeal from an order denying a motion for a new trial.

The first assignment of error, in substance, charges the court with error in submitting the issue of contributory negligence of the plaintiff to the jury. It is contended that there was no issue plaintiff was negligent and hence the making of the charge by the court on contributory negligence was prejudicial error.

In the recent case of *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, the Supreme Court in paragraph two of the syllabus stated:

"Where, in an action to recover damages for personal injuries grounded on negligence, the evidence raises the issue of contributory negligence, the court should charge on that subject regardless of the pleadings."

In the present case the guardian *ad litem* on behalf of the minor filed a general denial. The father of the defendant was an original party to the action and by answer raised the issue of conributory negligence. However, he was dismissed from the action prior to trial and hence his answer did not deliniate the issues at the trial. However, in accordance with the quoted syllabus, if the issue was raised by the evidence, the charge was not only proper but required. In the opinion Justice O'Neill states:

"Appellee's answer did not raise the issue of contributory negligence. Nevertheless, if the evidence adduced at the trial raises this issue, it is reversible error for the trial court not to instruct on contributory negligence, even though appellee did not put it in issue by his answer."

Thus the state of the pleadings is not determinative of the issue. The problem concerned is whether or not there was evidence at the trial from which the jury could conclude that plaintiff was negligent and that this negligence contributed to his own injury.

It becomes immediately apparent that the only conduct of plaintiff which could be negligent was his act of going 25-50 yards to the clearing, thus in effect concealing himself by the intervening woods and brush from the group that remained at the road. The specific issue is whether this conduct, in the light of the testimony concerning the situation existing at the time of this conduct constituted an unreasonable disregard for his own safety by the plaintiff.

In *Terminal Co.* v. *Hancock* (1906), 75 Ohio St. 88, 110, the court says:

"Negligence is said to be such an inadvertent imperfection, by a responsible human agent, in the discharge of duty, as naturally may produce damage, and these acts are

negligent acts because it is the duty of every human being to protect himself. Any act, therefore, which subjects the doer of it to unnecessary danger is a breach of that duty and in the last analysis is negligence.''

In *Hubbard* v. *U. S.* (1969), 295 F. Supp. 524, 532, a hunting accident case, the court says:

''Everybody has the duty of exercising ordinary care at all times for his own safety—that includes hunters. The care required depends on the circumstances and conditions then existing.''

In short the plaintiff was under a duty to act with reasonable prudence under the circumstances then existing for his own safety. Is there evidence that he did not so act and that the jury could therefore conclude his own negligent conduct contributed to his own injury? If such evidence, on which reasonable minds might differ, was before the jury, the judge was required to charge on the issue.

Although the evidence indicated that the six boys drove to the wooded area in question for the purpose of target shooting, there is no testimony that all boys considered the clearing area back in the woods to be the place for the target shooting. In fact some shooting took place up at the road. There is testimony that the guns, or at least some of them, were loaded at the  road area when the boys got out of the car. There is testimony:

1. That Cassidy fired either one or two shots at the road area.

2. That Jim Baldy fired at a newspaper at the road area.

3. That Jim Baldy put up some beer cans at the road area for the boys to shoot at.

4. That the defendant fired twice, once into the ground and later when the allegedly negligent shot was fired.

In short, there was evidence that at least some of the boys considered the road area to be the place for shooting and even set up targets there. Tom Oreweiler testified that Jim Cassidy was shooting at beer cans. Jack Metzger, who was with plaintiff in the cleared area at the time plaintiff was hit, testified he went down the trail a minute or so after the plaintiff. He also testified that he saw Jim

Baldy take one shot at a newspaper. Now Jim Baldy, prior to the shot that hit plaintiff, was *only* at the road area. It may therefore be inferred that plaintiff also was present when this shot was fired or else was walking down the trail when this shot was fired. Yet knowing that others were using the road area to shoot at targets, he nevertheless went to the hidden clearing and was there long enough to fire two or three pistol shots before his injury occurred.

While one may assume that others will obey the law and act in accordance with that presumption, this is merely a presumption; and, if there be actual knowledge a statute is being violated, one cannot shut his eyes and rely only on the presumption.

*Coal Co.* v. *Estievenard* (1895), 53 Ohio St. 43, in paragraph five of syllabus states:

"If one party has been negligent, and the other party has knowledge thereof, or is chargeable with such knowledge, he must thereafter act with reference to such negligence, and cannot shut his eyes and claim that he relied upon a proper performance of duty by the other party."

Thus here, if plaintiff knew that shooting was occurring at the highway, the fact a statute prohibited shooting from a highway would not excuse him from using due care for his own safety in the light of his actual knowledge. Plaintiff stated that he knew it was dangerous to go into the wooded area if the other boys did not know he was there, and yet told defendant he was going there from some distance in an ordinary tone of voice when defendant was engaged in a conversation with Cassidy and defendant gave no indication he heard. Much of this is contradicted in one way or another, but we believe it is sufficiently substantial to create an issue of fact as to whether plaintiff, knowing he would be hidden from the rest, knowing that some were using or intending to use the road as a firing area, and knowing that defendant and Cassidy were engaged in a conversation when he gave warning of his leaving and that defendant at least gave no indication of having heard, nevertheless proceeded into an area where he could not be readily seen and thus failed to use reasonable care for his own safety.

It might be objected that since the shot that allegedly hit him was inadverently fired into the woods (the defendant was seeking information from one Cassidy as to how the safety on the Browning rifle worked when the gun went off) but not purposely aimed there that his invisibility could not contribute proximately to his injury. His presence at the particular spot was essential to his injury but, it may be claimed, his being hidden was immaterial. The shot was not aimed anyway. A possible causal link however still remains. If he had been visible and the defendant could be visually aware of his presence, then, in asking Cassidy how the safety worked, the defendant could well have avoided pointing the gun in plaintiff's direction. He testified that he knew the rules of handling guns and that "I had to point it away from the rest of the people that were standing around me." The question as to contributory negligence and its causal relationship to plaintiff's injury was a jury question, presented by the evidence advanced at the trial, and the court properly included in his charge the subject of contributory negligence.

The second and third assignments of error object to the content of the court's charge on contributory negligence as distinguished from plaintiff's objection to any charge on the subject at all. Assignment of error No. 2 objects to a special charge; assignment of error No. 3 objects to a portion of the general charge, but the specific error assigned is identical.

The special charge to which objection is taken is as follows:

"Ladies and gentlemen of the Jury, if you find from the evidence in this case that plaintiff, Andrew P. Wren, was negligent in going into the woods under the circumstances and conditions existing as shown by the evidence in this case, and that his own negligence contributed directly and proximately to bring about his injuries and damages, then plaintiff cannot recover under the law *no matter how negligent the defendant may have been,* and your verdict must be for the defendant." (Emphasis added.)

The specific objection is to the inclusion of the phrase "no matter how negligent the defendant may have been."

The charge itself deals with contributory neglignce of the plaintiff; the clause deals with the defendant's negligence and hence both issues of negligence and contributory negligence are involved.

The first paragraph in the syllabus of *Myers* v. *Lawson Milk Co.* (1968), 14 Ohio St. 2d 111, reads as follows:

"Use of the phrases 'to some extent' and 'without respect to the degree or amount of negligence of either' in a special instruction to the jury on the issue of contributory negligence is prejudicial error, whether such phrases pertain to issues of negligence, contributory negligence, or proximate cause."

The court holds that clauses such as "in the slightest degree" or "in any degree" invite comparison of the negligence of the parties by the jury and, since Ohio does not recognize comparative negligence, lead to improper speculation by the jury. The thrust of this decision is that any qualifying clauses which lead to a consideration that negligence is a matter of degree is erroneous. In the present case the clause "No matter how negligent the defendant may have been" necessarily implies that negligence may exist in increments. It is implicit that there may have been slight negligence or there may have been great negligence—and this invites one to think of negligence as being a spectrum extending from slight to great. The approach is negative. It says that such degrees are to be disregarded; but that is not the error. The error lies in leading the jury to think negligence can exist in bits and increments when Ohio law, not recognizing comparative negligence, says negligence either is or is not; there are no steps, increments, or degrees.

This being the case the error really touches upon all elements of the case for it touches negligence, contributory negligence and even proximate cause. It goes to the basic theory of the case and is therefore necessarily prejudicial.

We conclude that both assignments of error Nos. 2 and 3 are well taken.

*Judgment reversed.*

YOUNGER and GUERNSEY, JJ., concur.