537 P.2d 47

**Antonio GARCIA and Mary Garcia,
Appellants,**

**v.**

**Joe O. PUCHI, Appellee.**

**No. 2 CA–CIV 1823.**

Court of Appeals of Arizona,
Division 2.

June 30, 1975.

Fish, Briney, Duffield & Miller, P. C. by Samuel D. Alfred, Tucson, for appellants.

Solsberry & McDonald by Kerry A. McDonald and E. Leigh Larson, Nogales, for appellee.

## OPINION

ALICE TRUMAN, Judge of the Superior Court.

Appellee, plaintiff below, was granted a new trial after a defense verdict[1] in his suit for personal injuries against appellants, defendants below. (We shall hereinafter refer to the parties as plaintiff and defendants.) The lower court, in granting the plaintiff's motion for a new trial, stated as its reason that it had erred in giving a contributory negligence instruction since there was no evidence of such negligence on the part of the plaintiff.

Defendants claim two grounds for reversal: (1) Their motion for a directed verdict should have been granted, and (2) a new trial should not have been granted since the contributory negligence issue was properly submitted to the jury. Since we

---

1. His claim was that Mr. Garcia had negligently entrusted his grandson with a firearm or negligently supervised his use of it.

agree that there was sufficient evidence of contributory negligence on the part of the plaintiff, we address ourselves only to that issue.

On September 1, 1969, Mr. Garcia and his grandson, Donald, went dove hunting in the area of Hathaway ranch in Nogales, Arizona. It was the first day of dove season and this area was commonly used by hunters. They arrived in the area late in the afternoon and the weather was cloudy and windy. Donald was then only 11 years of age, almost five feet in height and was experienced in the use of firearms.

Plaintiff and his son also went dove hunting in the area and there was evidence to the effect that they had arrived on the scene before Garcia and his grandson. It seems that the hunting expedition had been planned the day before by the Puchis, Garcia and several other men. In addition to Donald, there were other young people shooting in the area, including plaintiff's two sons.

Everyone was aware of the fact that the area was crowded and much shooting was going on. When the Puchis arrived, they proceeded south and continued in that direction for about an hour. The plaintiff was familiar with the area as he regularly hunted there. When Garcia and his grandson arrived on the scene, they did not see Mr. Puchi or his son but were aware of the fact that some hunters were shooting in the southern area. Although one witness testified that he had heard Mr. Puchi's voice, others testified that they did not hear or see Mr. Puchi until he emerged from behind a bush yelling that he had been shot. Apparently there was much vegetation growing in the area, denser in some spots than in others. Plaintiff Puchi and his son, after hunting southwards for about an hour, decided to head back north. The son was walking approximately 15 feet behind his father and a few feet to one side of him. They were walking along the riverbed and could hear a lot of shooting. As they started to walk up from the

river edge, they saw Mr. Garcia's grandson, Donald, about 60 to 65 yards away. The plaintiff did not call out or signal in any way his presence, but, according to him, assumed that Donald could see him. No evidence as to the color of the plaintiff's clothing was presented.

There was a great deal of shrubbery in this area, at least three feet high; also, sunflower plants about five to six feet in height. Donald shot at a bird which was about 10 yards to the left of and 10 feet above the shrubbery from which Puchi subsequently emerged yelling that he had been shot. According to the plaintiff:

" . . . he [Donald] wasn't doing anything when I saw him; he was just standing there, but all of a sudden I saw him come down with a shotgun and when he did, he just shot me."

The plaintiff was asked what he was doing as he was traveling back north to which he responded:

"A. Talking.

Q. Anything else?

A. No.

Q. Were you hunting?

A. I didn't shoot; my son took I believe one or two shots."

The bush from which the plaintiff emerged after being shot was described as being approximately five to six feet tall. Until the plaintiff yelled, other hunters in the area where Donald was hunting were not aware of plaintiff's presence. Also, there was a considerable amount of shooting in the general area at the time.

An appellate court will not disturb an order granting a new trial unless the probative force of the evidence clearly demonstrates the trial court's action is an abuse of discretion. Heaton v. Waters, 8 Ariz.App. 256, 445 P.2d 458 (1968). It is well settled that submission of the issue of contributory negligence to a jury when there is no reasonable evidence in the record to support it, is reversible error and grounds for a new trial. Pinewood Devel-

opment Company v. Truman, 20 Ariz.App. 544, 514 P.2d 497 (1973); Sweet v. Ybarra, 13 Ariz.App. 101, 474 P.2d 460 (1970); Estabrook v. J. C. Penney Company, 105 Ariz. 302, 464 P.2d 325 (1970). We believe there was sufficient evidence to submit the issue of plaintiff's contributory negligence to the jury.

In the case of Edgar v. Brandvold, 9 Wash.App. 899, 515 P.2d 991 (1973), a "hunting accident" situation, the court enunciated the following standard of care:

"The degree of care required of both the defendants and the plaintiff was the care a reasonably prudent person would exercise under the circumstances and commensurate with the risks involved. The degree of care required in any situation is the care needed to avoid the danger presented. Though the hazards of each predicament in life differ, the responsibility remains to meet the hazards, whatever they may be, as a prudent person would meet them. The inquiry that must be answered in every case is whether the party acted with caution equal to the peril. Thus it is for the jury, as reasonable people, to decide whether the actor proceeded with due regard and caution whether he was helping a blind person across the street, handling dynamite or shooting a gun. (Citations omitted)." 515 P.2d at 993.

In the case of Wren v. Steiger, 23 Ohio App.2d 135, 261 N.E.2d 191 (1970), there was evidence that a 16 year old, engaged in target shooting with others in an isolated wooded area, knew that others with loaded guns remained at the road and were engaged in shooting there, or preparing to do so. He proceeded into the woods so that he was concealed from those remaining at the road area. The court held that a factual question was presented for the jury's determination as to whether he did or did not use reasonable care for his own safety under the circumstances.

In Johnson v. Holzemer, 263 Minn. 227, 116 N.W.2d 673 (1962), the court held that where the evidence showed that a 15 year old had knowledge and experience in hunting, the jury could find that he was contributorily negligent in walking down the road in front of a 13 year old carrying a loaded shotgun.

In Blanchard v. Noteware, 263 App.Div. 186, 32 N.Y.S.2d 188 (1942), the court held that the plaintiff's contributory negligence was an issue. There was evidence that the defendant was about to shoot a flying bird, did not see the plaintiff and could not reasonably be expected to announce his presence. The plaintiff saw the defendant hunting, saw a pheasant on the ground and gave no warning of his presence.

In Menefee v. Williams, 259 Cal.App.2d 56, 66 Cal.Rptr. 108 (1968), the plaintiff and three others went deer hunting and set up a hunting camp in a mountainous region. At about 3 p. m., Menefee and Williams drove to an area away from the camp, left Menefee's truck parked and proceeded down a deep canyon. They didn't see any deer, and because the sun was getting low, Menefee returned to the truck from the south along a raised embankment. Williams, on the other hand, proceeded northerly in returning to the truck and seated himself on the embankment, near the truck, so that he might observe any deer that might pass through a small clearing south of his position. He was wearing a red hunting cap and black and red plaid jacket, and only his head and possibly a portion of his shoulders protruded above the level of the embankment and surrounding brush. About 45 minutes later, he heard a gun report and was wounded. He started crawling toward the truck when he saw Williams, about 60 yards to the north, holding a rifle in two hands.

The court held that there was substantial evidence, together with the inference which reasonably could be drawn therefrom, from which the trier of fact could find that Menefee was negligent and that his negligence was a proximate cause of his injury.

In the case of Bezemek v. Crystal, 27 Mich.App. 36, 183 N.W.2d 414 (1970), the plaintiff, defendant, and four companions, began deer hunting just after daybreak and hunted together until approximately 11 a. m. when they decided to split their forces to drive a "pothole" or small swamp. The plaintiff and two companions established themselves in a line on the eastside of the "pothole" while the defendant and two companions approached the swampy area in a line from the west. When several deer ran from the swamp and headed south, the defendant fired three times. He failed to hit any of the deer, but one of his shots struck and injured the plaintiff. A contributory negligence instruction was upheld.

Our review of the evidence leads us to conclude that the issue of contributory negligence was properly submitted to the jury. Plaintiff was very familiar with the hunting area, knew that there were many other persons hunting within the small area, and that there was a great deal of shooting. Furthermore, the nature of the terrain was such that a hunter could be obscured from the vision of other hunters because of the dense vegetation. Also, plaintiff testified that he saw Donald when he was approximatley 60 to 65 yards away from him. He apparently proceeded northward for about 30 yards, since, according to him, he was approximately 35 yards away from Donald when injured. A logical inference that reasonable minds could draw from these circumstances was that plaintiff should have alerted Donald to his presence and should not have assumed that because he saw Donald, the converse was true. The totality of circumstances was such that the jury could reasonably conclude that Mr. Puchi did not exercise the proper degree of care for his own safety and that such negligence contributed to his injury.

The order granting a new trial is vacated and the lower court is directed to enter judgment for the defendants in accordance with the verdict.

HOWARD, C. J., and KRUCKER, J., concur.

HATHAWAY, J., having requested that he be relieved from consideration of this matter, ALICE TRUMAN, J., was called to sit in his stead and participate in the determination of this decision.