**Joan M. RHEA, Administratrix of the Estate of Ricky Deward Rhea, Deceased, Plaintiff,**

**v.**

**HORN–KEEN CORPORATION, Clyde Horn, Jerry Horn, and Walter Keen, Defendants.**

**Civ. A. No. 82–0372–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

March 14, 1984.

Carl E. McAfee, Norton, Va., for plaintiff.

Douglas S. Tweed, Kingsport, Tenn., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on the cross motions for summary judgment filed by the plaintiff and the defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiff, Joan M. Rhea, administratrix of the estate of Ricky Deward Rhea, deceased, is a resident of the State of Tennessee. She claims that by failing to design, construct, and maintain the race track in a reasonably safe condition, the defendants acted negligently and that as a result of their negligence, the plaintiff's decedent was killed on September 27, 1981. The plaintiff seeks a judgment against the defendants, Jointly and severally, in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000). The defendants, Horn-Keen Corporation, Clyde Horn, Jerry Horn, and Walter Keen, are residents of the Commonwealth of Virginia. They assert that because the plaintiff and the plaintiff's decedent husband executed a "Release and Waiver of Liability and Indemnity" agreement before the decedent's participation in the race on September 27, 1981, such release bars any cause of action which the plaintiff otherwise may have had against the defendants. This Court has diversity jurisdiction over the present cause of action, pursuant to 28 U.S.C. § 1332(a), (c).

## I. FACTUAL SUMMARY

The facts in this case essentially are undisputed. The plaintiff's decedent on various occasions participated in the drag racing events which were held at the defendants' property known as the Richlands International Dragway and located in Tazewell County, Virginia. The plaintiff and

the plaintiff's decedent voluntarily signed a "Waiver and Release" form prior to but specifically related to the racing event of September 27, 1981.[1] The Plaintiff alleges: that while participating in the race, the decedent experienced mechanical failure of his race car, and as a result, his vehicle proceeded off the dragway, up and over the protective curved embankment at the end of the dragway; and that his ensuing accident resulted in his death.

The Plaintiff contends that because the defendants improperly designed, constructed, and maintained their race track, they failed to provide reasonably safe conditions at the track: Thus, their negligent acts caused the death of the plaintiff's husband. On the other hand, the defendants deny these allegations and further argue that before the event in question, both the plaintiff and the decedent voluntarily entered into a waiver and release agreement with the defendants: Thus, such an agreement bars the plaintiff's cause of action.

## II. THE ISSUES AND THE RULINGS OF THE COURT

Under the *Erie* doctrine, a federal court exercising diversity jurisdiction must apply the rules determined by the conflict of laws of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Kline v. Wheels by Kinney, Inc.,* 464 F.2d 184 (4th Cir.1972); Restatement (First) Conflict of Laws § 7 (1934). The general rules followed by Virginia are that the *lex loci delicti* determines the effect of a release and "that the law of the place of the execution of the release governs the validity of the release." *White v. American Motors Sales Corp.,*

550 F.Supp. 1287, 1289, 1290 (W.D.Va. 1982); *Aff'd* 714 F.2d 135 (4th Cir.1983). Thus, this court will use the law of Virginia to examine the substantive rights of the parties in this multistate tort action.

The plaintiff alleges that because the release in question was not under seal and was not supported by valuable consideration, it was an invalid instrument. In support of her argument, the plaintiff cites *Seymour et al. v. New Bremen Speedway, Inc., et al.,* 31 Ohio App.2d 141, 287 N.E.2d 111 (1971) in which the court held, *inter alia,* that the consideration of the driver's being allowed to compete in car racing events for prize money constituted a valuable consideration and such a release was, therefore, not invalid for the want of consideration.

"The question of the adequacy of the consideration given for the release is undoubtedly a material one." *Bedser v. Horton Motor Lines, Inc.,* 122 F.2d 406, 409 (4th Cir.1941). (Citations omitted). Although the defendants did not address this issue in specific terms, the court still must determine whether the waiver and release agreement was invalid because of the lack of consideration.

■ The *Doganieri* Court provides a frame of reference by which this court may examine this issue, by writing:

Failure of consideration may … invalidate a contract, since it is a fundamental rule of the law of contracts that in order for an agreement to be enforceable, it must be supported by consideration.…
The consideration necessary to support a contract [,however,] need not be equal to what is being exchanged as long as it is

---

1. The plaintiff submitted affidavits in which she alleges the invalidity of the waiver and release form on, *inter alia,* the ground that the document was not signed on the day of the race. She, however, does not deny that she and the decedent voluntarily signed the document or that the release related to the race at issue and was signed before that race held on the day in question. Nor does she allege or seek to establish duress, fraud, or mutual mistake of fact. The defendants correctly conclude that "[a]t best, the affidavits create a simple issue of fact

as to how long before the race plaintiff and her decedent signed the release. That is not material since the release clearly pertained to this race and was signed before decedent was allowed to participate in it. Those are the material facts, and they are not contested." (Defendants' Reply Brief at 9–10). *See, e.g.: Hubbard v. United States,* 295 F.Supp. 524, 532 (E.D.Va.1969) (in which the court held that the time at which the participants in a deer hunt were briefed was immaterial to the issues of the case).

of some value.... [T]he general rule [is] that a release of an obligation must be based upon a consideration deemed valuable in law.

*Doganieri v. United States,* 520 F.Supp. 1093, 1095 (N.D.W.Va.1981). (Citations omitted). In light of these legal concepts, the court is of the opinion that the release of the defendants' obligation was based upon a consideration deemed valuable in law. It bases its conclusions on at least two grounds.

First, the court reasons that since the release was executed without any fraud or misrepresentation (*see supra* note 1), it was supported by sufficient consideration when it was executed upon the condition that the defendants would grant the decedent the right to participate in the racing event of September 27, 1981: Such a release was valid and binding on the Plaintiff and the decedent. *See e.g.: Northwestern National Insurance Co. et al. v. Cohen,* 138 Va. 177, 181–183, 121 S.E. 507, 509 (1924) (in which the court held that a release to an automobile insurer was supported by sufficient consideration when it was executed upon the condition that the insurer would stop its search for the stolen car). Stated another way, the requirement that all necessary parties knowingly and voluntarily must affix their signatures to the waiver and release agreement before a designated race driver could participate in a particular racing event operated as a condition precedent to effect the release of the defendants from any claim for damages except those due to wanton or willful negligence. Thus, the consideration shown in this contractual situation depended upon the plaintiff and the decedent's understanding that the purpose of the release agreement was to induce the defendants to grant the decedent the right to participate in the racing event of September 27, 1981. The record shows that in exchange for that right to participate, the plaintiff and the decedent knowingly and voluntarily agreed to and did sign the release agreement. In essence, the parties met all elements of a contractual agreement.

Second, the court uses the doctrine of equitable estoppel as a basis to determine that the release in question was supported by sufficient consideration. More specifically, the plaintiff is estopped from raising the issue of the adequacy of consideration as a ground for setting aside the release. All elements of an estoppel by conduct are present in this issue. The plaintiff and the decedent's affirmative act of signing the release agreement induced the defendants to allow the decedent's participation in the racing event of September 27, 1981. The defendants' reasonable reliance upon that affirmative act, however, altered their position to their detriment. Had the defendants realized, for example, that the plaintiff never intended to honor the very essence of that release, they never would have entered into that contract with these parties: Their reasons would be based on the fact that without a waiver and release agreement, their liability would increase so much that sponsoring such racing events would become financially prohibitive.

The Virginia Supreme Court discusses an estoppel by conduct in the following terms:

> A *waiver or release ... without consideration may sometimes be sufficient when one has thereby been induced to alter his position to his prejudice.* "In order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct." [Citations omitted].
>
> ...
>
> "Cases may be suggested ... where the promisor should clearly be held discharged. Suppose the promisee informs the promisor that performance will not be required, and relying on this the promisor is not ready to perform at the day, or has so altered his position that he cannot perform at all. Though promissory estoppel is not ordinarily a substitute for consideration, justice demands that in the cases supposed the promisee should not be allowed to hold the promisor liable

for his non-performance." Williston on Contracts, § 1831.

*Georgeton v. Reynolds,* 161 Va. 164, 173–174, 170 S.E. 741, 744 (1933). (Emphasis added). *See also: Clark v. Sperry,* 125 W.Va. 718, 25 S.E.2d 870 (1943); 17 Am. Jur.2d *Contracts* § 89 (1964 and Supp. 1983), pp. 430–432.

■ The plaintiff and the decedent may have acted unwisely by entering into the release agreement with the defendants. The court nevertheless stresses: "Where a legal capacity is shown to exist, that the party had sufficient understanding to clearly comprehend [sic], that he consented freely to the special matter about which he was engaged, and no fraud or undue influence is shown to have been used to bring about the result, the validity of the act cannot be impeached, however unreasonable or imprudent it may seem to others." *Chesapeake and Ohio Railway Co. v. Mosby,* 93 Va. 93, 95, 24 S.E. 916, 917 (1896).

In summary, for the reasons stated above, the court concludes that the plaintiff and the decedent freely and knowingly entered into the waiver and release agreement, and such agreement was supported by adequate consideration. Thus, the plaintiff's contention is without merit and does not constitute a ground for setting aside the release.

■ The second issue which the court addresses is whether the waiver and release agreement itself bars the plaintiff's cause of action. The court notes that the validity of releases in the context of race tracks apparently has not been considered either by Virginia case law or by a Virginia statute. The Virginia Supreme Court as well as this court, however, have upheld and enforced such release provisions in other factual situations. *See e.g.: Chesapeake and Ohio Railway Company v. Clifton Forge-Waynesboro Telephone Company,* 216 Va. 858, 224 S.E.2d 317 (1976); *J.H. Fralin et al. v. American Cyanamid Company,* 239 F.Supp. 178 (W.D.Va.1965). The Virginia Supreme Court also has held that because of statutory law, exculpatory clauses involving a public utility, a common carrier, or a similar entity connected with the public interest are invalid. *See e.g.: Southern States Cooperative, Inc. v. Norfolk and Western Railway Co., Inc., et al.,* 219 Va. 191, 247 S.E.2d 461 (1978). (Even in these contexts of a public entity, however, the Court has refused to adopt a blanket rule prohibiting all release provisions. *See e.g.: Chesapeake and Ohio Railway Company v. Clifton Forge-Waynesboro Telephone Company,* 216 Va. 858, 224 S.E. 317 (1976)).

On the other hand, other jurisdictions have addressed the issue concerning the validity of waiver and release forms in the context of race tracks: Almost unanimously, they have upheld such agreements. *See e.g.: Tope v. Waterford Hills Roadracing Corporation,* 81 Mich.App. 591, 265 N.W.2d 761 (1978) (in which the factual situation is almost identical to that of the present case); *Gore v. Tri-County Raceway, Inc.,* 407 F.Supp. 489 (M.D.Ala.1974) (in which the cause of action is virtually identical to that of the instant case); *Huckaby v. Confederate Motor Speedway,* 276 S.C. 629, 281 S.E.2d 223 (1981) (in which the court ruled on the latter two issues raised in this case); *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1972) (in which the court held that in the absence of legislative intent, such release freely entered into by a participant in a speed contest is not void as against public policy); *cf. McCarthy v. National Association for Stock Car Auto Racing, Inc.,* 48 N.J. 539, 226 A.2d 713 (1967) (in which the court held that because of statutory law, releases in the car racing context were invalid as against public policy).

In *Gore v. Tri-County Raceway, Inc.,* 407 F.Supp. at 492, the court in granting summary judgment held:

It should be noted that participation in automobile races and other sporting events is a voluntary undertaking. If a prospective participant wishes to place himself in the competition sufficiently to voluntarily agree [sic] that he will not hold the organizer or sponsor of the

event liable for his injuries, the courts should enforce such agreements. If these agreements, voluntarily entered into, were not upheld, the effect would be to increase the liability of those organizing or sponsoring such events to such an extent that no one would be willing to undertake to sponsor a sporting event. Clearly, this would not be in the public interest.

Thus, the court is of the opinion that the agreement between the parties of this suit does not involve either a public utility or a quasi-public situation, and the agreement of release, voluntarily executed by the parties, should be upheld.

### III. MOTION FOR SUMMARY JUDGMENT BASED UPON THE ASSUMPTION OF RISK

The third issue which the Court raises *sua sponte* is whether the plaintiff's cause of action in addition is barred by the assumption of risk. The essence of the assumption of risk is venturousness. "The doctrine has developed from the maxim, *volenti non fit injuria* .... The doctrine rests on two premises: First, that the nature and extent of the risk are fully appreciated; and, second, that it is voluntarily incurred." *Hunn v. Windsor Hotel Co.*, 119 W.Va. 215, 217–218, 193 S.E. 57, 58 (1937). Illustrations of the application of the principles underlying the doctrine in its primary sense are provided by cases arising out of injuries suffered by participants in games, sports, and contests which involve bodily contacts or other hazards. *See e.g.: Hubbard v. United States*, 295 F.Supp. 524, 532 (E.D.1969) (involving a hunting accident); *Huckaby v. Confederate Motor Speedway, Inc.*, 281 S.E.2d at 224. *See generally:* 13B Michie's Jur. *Negligence* § 43 (1978, Cum.Supp.1983); 57 Am.Jur.2d *Negligence* §§ 274–287 (1971, Supp.1983).

 The record shows that the decedent participated as a race driver at the defendants' dragway on other occasions before September 27, 1981. He knew or should have known the design, construction, and conditions of that racetrack as they existed on that September date. The release that he and the plaintiff voluntarily signed, among other things, should have warned him accordingly. The decedent assumed the attendant risk when he voluntarily joined the race that day. Thus, the court holds that the record establishes the assumption of risk as a matter of law.

### IV. CONCLUSION

For the reasons stated above, it accordingly is the Order, Judgment, and Decree of this court that the defendants' motion for summary judgment be, and the same is hereby, granted, and the above styled cause is hereby dismissed.